UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| MARTIN S. ASABA, | NO. C17-1039-JPD |
| Plaintiff, | |
| v. | ORDER AFFIRMING THE COMMISSIONER |
| NANCY A. BERRYHILL, Deputy Commissioner of Social Security for Operations, | |
| Defendant. | |

Plaintiff Martin S. Asaba appeals the final decision of the Commissioner of the Social

Security Administration ("Commissioner") which denied his applications for Disability

Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under Titles II and XVI

of the Social Security Act, 42 U.S.C. §§ 401-33 and 1381-83f, after a hearing before an

administrative law judge ("ALJ").  For the reasons set forth below, the Court ORDERS that the

Commissioner's decision be AFFIRMED.

I.       FACTS AND PROCEDURAL HISTORY

At the time of the administrative hearing, plaintiff was a forty-six year old man with a

high school education.  Administrative Record ("AR") at 44.  He testified that he came to the

United States as a refugee from Sudan in 1995, and has been living in a homeless shelter for

ORDER - 1

several years. AR at 47, 54. His past work experience includes employment as a fish cleaner/packer, parking attendant, and cashier. AR at 46-47, 61. Plaintiff was last gainfully employed on a part-time basis in a temporary assembly position in December 2013, and in a fishing plant several years prior. AR at 398.

On September 16, 2013, plaintiff filed applications for SSI payments and DIB, alleging an onset date of October 1, 2011. AR at 42. During the hearing, plaintiff amended his alleged onset date to September 16, 2013. AR at 42. Plaintiff asserts that he is disabled due to post-surgery complications with both ankles, as well as depression. AR at 19.

The Commissioner denied plaintiff's claim initially and on reconsideration. AR at 131, 139, 142. Plaintiff requested a hearing, which took place on May 5, 2016. AR at 36-73. On November 21, 2016, the ALJ issued a decision finding plaintiff not disabled and denied benefits based on his finding that plaintiff could perform a specific job existing in significant numbers in the national economy. AR at 27-28. Plaintiff's request for review by the Appeals Council was denied, AR at 1-6, making the ALJ's ruling the "final decision" of the Commissioner as that term is defined by 42 U.S.C. § 405(g).

On July 11, 2017, plaintiff timely filed the present action challenging the Commissioner's decision. Dkt. 4. In the present appeal, plaintiff does not allege that the ALJ erred in assessing his physical limitations related to his ankles, but only challenges the ALJ's assessment of his mental limitations. Dkt. 10 at 14.

## II. JURISDICTION

Jurisdiction to review the Commissioner's decision exists pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3).

III.    STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), this Court may set aside the Commissioner's denial of social security benefits when the ALJ's findings are based on legal error or not supported by substantial evidence in the record as a whole. *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 (9th Cir. 2005). "Substantial evidence" is more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989). The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving any other ambiguities that might exist. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). While the Court is required to examine the record as a whole, it may neither reweigh the evidence nor substitute its judgment for that of the Commissioner. *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002). When the evidence is susceptible to more than one rational interpretation, it is the Commissioner's conclusion that must be upheld. *Id.*

The Court may direct an award of benefits where "the record has been fully developed and further administrative proceedings would serve no useful purpose." *McCartey v. Massanari*, 298 F.3d 1072, 1076 (9th Cir. 2002) (citing *Smolen v. Chater*, 80 F.3d 1273, 1292 (9th Cir. 1996)). The Court may find that this occurs when:

> (1) the ALJ has failed to provide legally sufficient reasons for rejecting the claimant's evidence; (2) there are no outstanding issues that must be resolved before a determination of disability can be made; and (3) it is clear from the record that the ALJ would be required to find the claimant disabled if he considered the claimant's evidence.

*Id.* at 1076-77; *see also Harman v. Apfel*, 211 F.3d 1172, 1178 (9th Cir. 2000) (noting that erroneously rejected evidence may be credited when all three elements are met).

## IV. EVALUATING DISABILITY

As the claimant, Mr. Asaba bears the burden of proving that he is disabled within the meaning of the Social Security Act (the "Act"). *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999) (internal citations omitted). The Act defines disability as the "inability to engage in any substantial gainful activity" due to a physical or mental impairment which has lasted, or is expected to last, for a continuous period of not less than twelve months. 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). A claimant is disabled under the Act only if his impairments are of such severity that he is unable to do his previous work, and cannot, considering his age, education, and work experience, engage in any other substantial gainful activity existing in the national economy. 42 U.S.C. §§ 423(d)(2)(A); *see also Tackett v. Apfel*, 180 F.3d 1094, 1098-99 (9th Cir. 1999).

The Commissioner has established a five step sequential evaluation process for determining whether a claimant is disabled within the meaning of the Act. *See* 20 C.F.R. §§ 404.1520, 416.920. The claimant bears the burden of proof during steps one through four. At step five, the burden shifts to the Commissioner. *Id.* If a claimant is found to be disabled at any step in the sequence, the inquiry ends without the need to consider subsequent steps. Step one asks whether the claimant is presently engaged in "substantial gainful activity." 20 C.F.R. §§ 404.1520(b), 416.920(b).[1] If he is, disability benefits are denied. If he is not, the Commissioner proceeds to step two. At step two, the claimant must establish that he has one or more medically severe impairments, or combination of impairments, that limit his physical or mental ability to do basic work activities. If the claimant does not have such impairments,

---

[1] Substantial gainful activity is work activity that is both substantial, i.e., involves significant physical and/or mental activities, and gainful, i.e., performed for profit. 20 C.F.R. § 404.1572.

he is not disabled. 20 C.F.R. §§ 404.1520(c), 416.920(c). If the claimant does have a severe impairment, the Commissioner moves to step three to determine whether the impairment meets or equals any of the listed impairments described in the regulations. 20 C.F.R. §§ 404.1520(d), 416.920(d). A claimant whose impairment meets or equals one of the listings for the required twelve-month duration requirement is disabled. *Id.*

When the claimant's impairment neither meets nor equals one of the impairments listed in the regulations, the Commissioner must proceed to step four and evaluate the claimant's residual functional capacity ("RFC"). 20 C.F.R. §§ 404.1520(e), 416.920(e). Here, the Commissioner evaluates the physical and mental demands of the claimant's past relevant work to determine whether he can still perform that work. 20 C.F.R. §§ 404.1520(f), 416.920(f). If the claimant is able to perform his past relevant work, he is not disabled; if the opposite is true, then the burden shifts to the Commissioner at step five to show that the claimant can perform other work that exists in significant numbers in the national economy, taking into consideration the claimant's RFC, age, education, and work experience. 20 C.F.R. §§ 404.1520(g), 416.920(g); *Tackett*, 180 F.3d at 1099, 1100. If the Commissioner finds the claimant is unable to perform other work, then the claimant is found disabled and benefits may be awarded.

## V.     DECISION BELOW

On November 21, 2016, the ALJ issued a decision finding the following:

1.     The claimant meets the insured status requirements of the Social Security Act through December 31, 2016.

2.     The claimant has not engaged in substantial gainful activity since September 16, 2013, the amended alleged onset date.

3.     The claimant has the following severe impairments status-post open reduction internal fixation (ORIF) of the right distal fibula/lateral malleolar fracture with degenerative changes; status-post open reduction internal fixation (ORIF) of left distal malleolus at the level

of the ankle joint; obesity; drug abuse; affective disorder versus major depressive disorder; and anxiety related disorders (PTSD).

4.     The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.

5.     After careful consideration of the entire record I find that the claimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a) except he may use a hand-held assistive device if medically necessary. He can occasionally balance, stoop, kneel, and crouch. He can never climb or crawl, nor operate foot controls. He must avoid concentrated exposure to vibrations and hazards. He can perform simple, routine tasks and follow short, simple instructions. He can do work that needs little or no judgment and can perform simple duties that can be learned on the job in a short period. He can work in proximity to co-workers, but not in a cooperative or team effort. He requires a work environment that has no more than superficial interactions with co-workers. He cannot deal with the general public, as in a sales position or where the general public is encountered as an essential element of the work process; however, incidental contact of a superficial nature with the general public is not precluded.

6.     The claimant is unable to perform any past relevant work.

7.     The claimant was born on XXXXX, 1969 and was 42 years old, which is defined as a younger individual age 18-44, on the alleged disability onset date. The claimant subsequently changed age category to a younger individual age 45-49.[2]

8.     The claimant has at least a high school education and is able to communicate in English.

9.     Transferability of job skills is not an issue in this case because the claimant's past relevant work is unskilled.

10.    Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform.

11.    The claimant has not been under a disability, as defined in the Social Security Act, from October 1, 2011, through the date of this decision.

AR at 17-28.

---

[2] The actual date is deleted in accordance with Local Rule CR 5.2, W.D. Washington.

## VI. ISSUES ON APPEAL

The principal issues on appeal are:

1.    Did the ALJ err in evaluating plaintiff's testimony regarding his symptoms?

2.    Did the ALJ err in evaluating the medical opinion evidence of a consultative examining psychologist and a treating psychiatrist?

3.    Did the ALJ err in assessing plaintiff's RFC?

Dkt. 10 at 2; Dkt. 14 at 2.

## VII. DISCUSSION

A.    The ALJ Did Not Err in Evaluating Plaintiff's Testimony

*1.    Legal Standard for Evaluating the Plaintiff's Testimony*

As noted above, it is the province of the ALJ to determine what weight should be afforded to a claimant's testimony, and this determination will not be disturbed unless it is not supported by substantial evidence. A determination of whether to accept a claimant's subjective symptom testimony requires a two-step analysis. 20 C.F.R. §§ 404.1529, 416.929; *Smolen*, 80 F.3d at 1281. First, the ALJ must determine whether there is a medically determinable impairment that reasonably could be expected to cause the claimant's symptoms. 20 C.F.R. §§ 404.1529(b), 416.929(b); *Smolen*, 80 F.3d at 1281-82. Once a claimant produces medical evidence of an underlying impairment, the ALJ may not discredit the claimant's testimony as to the severity of symptoms solely because they are unsupported by objective medical evidence. *Bunnell v. Sullivan*, 947 F.2d 341, 343 (9th Cir. 1991) (en banc); *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1988). Absent affirmative evidence showing that the claimant is malingering, the ALJ must provide "clear and convincing" reasons for rejecting the claimant's testimony.[3] *Burrell v. Colvin*, 775 F.3d 1133, 1136-37 (9th Cir. 2014) (citing

_____

[3] In Social Security Ruling (SSR) 16-3p, the Social Security Administration rescinded SSR 96-7p, eliminated the term "credibility" from its sub-regulatory policy, clarified that

*Molina v. Astrue*, 674 F.3d 1104, 1112 (9th Cir. 2012)).  *See also Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007).

When evaluating a claimant's subjective symptom testimony, the ALJ must specifically identify what testimony is not credible and what evidence undermines the claimant's complaints; general findings are insufficient.  *Smolen*, 80 F.3d at 1284; *Reddick*, 157 F.3d at 722.  The ALJ may consider "ordinary techniques of credibility evaluation," including a claimant's reputation for truthfulness, inconsistencies in testimony or between testimony and conduct, daily activities, work record, and testimony from physicians and third parties concerning the nature, severity, and effect of the alleged symptoms.  *Thomas*, 278 F.3d at 958-59 (citing *Light v. Social Sec. Admin.*, 119 F.3d 789, 792 (9th Cir. 1997)).

   2.   *The ALJ Provided Clear and Convincing Reasons for Discounting Plaintiff's Testimony*

The ALJ asserted that "after careful consideration of the evidence, I find that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence, and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision." AR at 25.  Specifically, the ALJ did not give plaintiff's testimony great weight because (1) plaintiff received little treatment for his mental impairments; (2) once plaintiff began taking medication for his mental impairments, he reported improved symptoms and said he was doing well;

"subjective symptom evaluation is not an examination of an individual's character[,]" and indicated it would more "more closely follow [its] regulatory language regarding symptom evaluation."  SSR 16-3p.  This change was effective March 28, 2016 and was therefore applicable to the November 21, 2016, ALJ decision in this case.  The Commissioner erroneously argues that "SSR 96-7p was in effect at the time the ALJ issued the decision," because "ALJs apply SSR 16-3- when making determinations and decisions on or after March 28, 2016." Dkt. 14 at 2 fn. 1.

(3) the ALJ questioned plaintiff's motivations for not entering a treatment program for alcohol abuse; (4) plaintiff's activities of daily living evince a greater degree of functioning than alleged; and (5) plaintiff's testimony with respect to his ankle impairment with post-surgery complications was inconsistent with evidence that he walked with a normal gait. AR at 23, 26. As discussed below, the Court finds that the ALJ's reasons are clear, convincing, and supported by substantial evidence in the record.

(a) *Limited Treatment for Mental Impairments*

In the ALJ's lengthy summary of the record evidence, the ALJ noted that plaintiff "presented for two psychotherapy sessions in July and August and was recommended to follow-up with his primary care provider regarding depression and anxiety." AR at 23. The ALJ later noted that although "the record suggest[s] an emergency room visit in March 2016 for suicidal ideation or alcohol intoxication . . . there is no emergency note of record. There was not much, if any, mental health follow-up until April 2016, when the claimant returned for ongoing services." AR at 24. The ALJ noted that he "reported a recent incident of a friend stealing a large sum of money from him and he felt betrayed and distrustful of people. He reported some situational depressive feelings, but was otherwise doing well." AR at 24.

With respect to the ALJ's assessment of plaintiff's statements regarding his symptoms, the ALJ found that "as for his mental health, other than two psychotherapy sessions in 2014, the claimant did not seek formal treatment until May 2015[.]" AR at 26, 411-17, 527. The amount of treatment is "an important indicator of the intensity and persistence" of a claimant's symptoms under the regulations. 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3). In addition, the ALJ noted that "there are very few, if any, complaints to his primary care provider regarding mental health symptoms." AR at 26.

1    The record reflects that plaintiff reported depression after getting a DUI and being sent

2    to court-ordered outpatient recovery, and continued to report depression in July through

3    October 2015, as well as insomnia and depression in March 2016.  AR at 415, 420, 430, 435,

4    446, 456.  However, it is true that most treatment notes in the record indicate that plaintiff

5    denied psychological symptoms, such as depression.  AR at 425, 440, 451, 464, 469, 477, 481,

6    486.  "Where the evidence is susceptible to more than one rational interpretation, it is the

7    ALJ's conclusion that must be upheld."  *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005).

8    The ALJ's finding that plaintiff has not sought much mental health treatment, and only

9    infrequently reported his mental health symptoms to providers despite his allegations of

10   debilitating symptoms, was clear, convincing, and supported by substantial evidence in the

11   record.

12           (b) *Improvement with Medication*

13           The ALJ also found that once plaintiff began taking medication for his mental

14   impairments, he reported improved symptoms and said he was doing well.  AR at 26.  An ALJ

15   may consider improvement in assessing the reliability of a claimant's statements.  *Morgan*, 169

16   F.3d at 599-600.  In July 2015, plaintiff had a formal psychiatric examination with Dr.

17   Hopfenbeck, who prescribed Sertaline and Trazodone for depression and sleep.  AR at 23, 449,

18   532-33, 452.  In October 2015, Dr. Hopfenbeck noted that he discussed with plaintiff that if

19   depression needs more help, "it would be possible to increase Sertraline, but [the patient] is

20   content with his current dosage."  AR at 26, 539.  Anxiety was "less of a problem" and

21   plaintiff was "not having trouble with flashbacks or panic."  AR at 539.  In January 2016,

22

23

24

1  plaintiff's medication dose was increased once by a physician's assistant, who noted that

2  plaintiff was not seeing a psychiatrist anymore. AR at 26, 423, 427.[4]

3       Plaintiff concedes that his symptoms improved with medication, although he alleges

4  they did not abate to a sufficient degree to allow him to maintain employment. Dkt. 10 at 12

5  (acknowledging that "Dr. Hopfenbeck's notes indicated that the Plaintiff reported that his

6  medication helped" his symptoms). As a result, the ALJ did not err by finding that plaintiff's

7  treatment records reflected improvement of his psychological symptoms, including depression

8  and insomnia, with medication.

9       (c) *Failure to Pursue Alcohol Treatment*

10       The ALJ also considered plaintiff's motivations for not entering a treatment program

11  for his alcohol abuse. AR at 22-23. The ALJ noted that "in July 2014, the claimant was noted

12  to still be drinking about six beers per day or a half print of hard liquor. He reported that he

13  drinks with the friends he stays with and it is hard to stop drinking while he is staying with

14  them; and he drinks when he is depressed." AR at 22. "He also stated that he was afraid if he

15  entered a treatment program, his lawyer would not be able to get ahold of him if he needed to

16  contact him for DSHS reasons." AR at 23.

17       The plaintiff does not specifically assign error to the ALJ's reasoning with respect to

18  plaintiff's lack of effort to address his alcohol abuse. Evidence of self-limitation and lack of

19  motivation by a claimant are appropriate considerations in determining the credibility of a

20  _____

21      [4] As discussed below, on June 16, 2016, Dr. Hopfenbeck submitted a letter on
plaintiff's behalf stating that despite plaintiff's "counseling and support, and adherence to

22  taking appropriate medications, currently Sertraline and Trazodone," he still suffered from
"severe symptoms of depression and PTSD." AR at 720. Dr. Hopfenbeck opined that "his

23  best hope is to achieve symptom reduction and housing, but his PTSD has been worsening for
several years, along with his depression...." AR at 720. However, the ALJ gave this opinion

24  "little weight" because it was inconsistent with his own treatment notes reflecting improvement
of his symptoms with medication, and this conclusion was supported by substantial evidence.

claimant's symptom testimony. *See Osenbrock v. Apfel*, 240 F.3d 1157, 1166 (9th Cir. 2001) (finding that to the extent the claimant's activities of daily living are limited, "they are *self-limited*" by lifestyle choices including failing to "commence a strategy to improve his circumstances by stopping smoking, quitting his alcohol consumption and getting on a program of reconditioning" as opined by the medical expert). This was a clear and convincing reason to give plaintiff's testimony regarding his mental impairments less weight.

      (d) *Activities of Daily Living*

      The ALJ considered plaintiff's overall activities of daily living, noting that "while the claimant is homeless, he still reports overall normal activities of daily living, such as the ability to prepare simple meals, do laundry and household chores, shop, and manage his money." AR at 26. In addition, the ALJ noted that "he reports to using public transportation, as he lost his license due to DUIs. He admitted that he has lots of friends and spends his days at the park or riding the bus around." AR at 26.

      Plaintiff asserts that he "is not claiming complete incapacity; only that he cannot sustain Substantial Gainful Activity. The activities listed by the ALJ are not inconsistent with an inability to perform Substantial Gainful activity. They are not transferable to a work setting." Dkt. 10 at 17. The Ninth Circuit has recognized that many home activities are not easily transferable to what may be the more grueling environment of the work place. *See Garrison v. Colvin*, 759 F.3d 995, 1016 (9th Cir. 2014). However, even where an individual's "activities suggest some difficulty functioning, they may be grounds for discrediting the claimant's testimony to the extent that they contradict claims of a totally debilitating impairment." *Molina v. Astue*, 674 F.3d 1104, 1113 (9th Cir. 2012).

      Here, plaintiff is not challenging the ALJ's assessment of his physical limitations, and only challenges his conclusion as to his mental limitations. The ALJ did not err by finding that

plaintiff's ability to prepare simple meals, do his laundry, perform household chores, manage

his money, shop, and use public transportation (after losing his driver's license due to DUIs)

shows a higher level of mental functioning than alleged by plaintiff. AR at 20, 21, 305-12.

Plaintiff also testified that he had lots of friends, and he spent his days at the park or riding the

bus. AR at 26, 47-48, 394, 423, 538. Plaintiff's daily activities were a clear and convincing

reason for the ALJ to find plaintiff's testimony less than fully credible.

      (e) *Inconsistent Statements Regarding Physical Symptoms*

      Finally, plaintiff argues that he is unable to ascertain how the ALJ's summary of his

relatively normal gait reflects upon his credibility. Dkt. 10 at 14-15. Specifically, the ALJ

noted that plaintiff's testimony with respect to his ankle impairment with post-surgery

complications was inconsistent with evidence that he walked with a normal gait. AR at 25-26.

However, an ALJ may consider the fact that plaintiff claimed he was disabled in part due to

ankle impairment with post-surgery complications, AR at 264, which was inconsistent with the

medical evidence in the record. An ALJ may consider contradictions within the medical

record. *See Carmickle v. Comm'r of Soc. Sec. Admin.*, 533 F.3d 1155, 1161 (9th Cir. 2008)

("Contradiction with the medical record is a sufficient basis for rejecting the claimant's

subjective testimony."). Accordingly, the ALJ provided several clear and convincing reasons,

supported by substantial evidence, for finding plaintiff's testimony less than fully credible.

      B.    The ALJ Did Not Err in Evaluating the Medical Opinion Evidence

         *1.    Standards for Reviewing Medical Evidence*

      As a matter of law, more weight is given to a treating physician's opinion than to that

of a non-treating physician because a treating physician "is employed to cure and has a greater

opportunity to know and observe the patient as an individual." *Magallanes v. Bowen*, 881 F.2d

747, 751 (9th Cir. 1989); *see also Orn v. Astrue*, 495 F.3d 625, 631 (9th Cir. 2007). A treating

physician's opinion, however, is not necessarily conclusive as to either a physical condition or the ultimate issue of disability, and can be rejected, whether or not that opinion is contradicted. *Magallanes*, 881 F.2d at 751. If an ALJ rejects the opinion of a treating or examining physician, the ALJ must give clear and convincing reasons for doing so if the opinion is not contradicted by other evidence, and specific and legitimate reasons if it is. *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1988). "This can be done by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Id.* (citing *Magallanes*, 881 F.2d at 751). The ALJ must do more than merely state his/her conclusions. "He must set forth his own interpretations and explain why they, rather than the doctors', are correct." *Id.* (citing *Embrey v. Bowen*, 849 F.2d 418, 421-22 (9th Cir. 1988)). Such conclusions must at all times be supported by substantial evidence. *Reddick*, 157 F.3d at 725.

The opinions of examining physicians are to be given more weight than non-examining physicians. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). Like treating physicians, the uncontradicted opinions of examining physicians may not be rejected without clear and convincing evidence. *Id.* An ALJ may reject the controverted opinions of an examining physician only by providing specific and legitimate reasons that are supported by the record. *Bayliss v. Barnhart,* 427 F.3d 1211, 1216 (9th Cir. 2005).

Opinions from non-examining medical sources are to be given less weight than treating or examining doctors. *Lester*, 81 F.3d at 831. However, an ALJ must always evaluate the opinions from such sources and may not simply ignore them. In other words, an ALJ must evaluate the opinion of a non-examining source and explain the weight given to it. Social Security Ruling ("SSR") 96-6p, 1996 WL 374180, at *2. Although an ALJ generally gives more weight to an examining doctor's opinion than to a non-examining doctor's opinion, a

non-examining doctor's opinion may nonetheless constitute substantial evidence if it is consistent with other independent evidence in the record. *Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002); *Orn*, 495 F.3d at 632-33.

   2. *Consultative Examining Psychologist David Widlan, Ph.D.*

   Dr. Widlan completed a psychological consultative examination of plaintiff at the request of the Social Security Administration on May 14, 2014. AR at 18, 22, 397-401. Plaintif reported a history of mood difficulties and alcohol dependence and described general dysphoria, lethargy, anhedonia, and suicidal ideation. AR at 22, 397. He also described general anxiety, fearfulness, and easy loss of temper. AR at 22, 397. He reported being easily overwhelmed and having difficulties with memory and concentration. AR at 22, 397. He reported drinking alcohol regularly, if not daily, and had a suspended driver's license for multiple DUIs. AR at 22, 397. He described his mood in terms of depression, and Dr. Widlan noted his affect was flattened and congruent. AR at 22, 398. Plaintiff was noted to perform poorly on mental status tasks; he had mild difficulty following the interview and displayed deficits in memory, concentration, and social reasoning. AR at 22, 298-400. Dr. Widlan noted that although English is plaintiff's second language, he spoke without difficulty. AR at 22, 298, 400.

   Dr. Widlan diagnosed plaintiff with Major Depressive Disorder, recurrent, severe without psychotic features, anxiety disorder NOS, alcohol dependence, continuous, and Cognitive Disorder NOS. In his medical source statement, he concluded that plaintiff "suffers from severe symptoms of depression and anxiety as well as cognitive issues. The Mental Status Examination indicated deficits in memory, concentration, and social reasoning." AR at 400. "He performed poorly on MSE tasks. He probably can cognitively accept instruction from a supervisor for very simple tasks. He clearly would be overwhelmed on more complex

tasks. Regardless he would struggle with persistence and slow pace and be prone to

absenteeism. He likely would have difficulty consistently negotiating social stressors." AR at

400. With respect to Dr. Widlan's prognosis/discussion, he noted that plaintiff was clearly in

need of alcohol abuse intervention, and that he "performed below what would be expected on

MSE tasks given his proficiency in English. English is his second language, but he spoke

without difficulty." AR at 400.

     The ALJ assigned little weight to Dr. Widlan's opinion, first explaining that because

Dr. Widlan did not review treatment notes he must have relied heavily on plaintiff's self-

report. AR at 22.[5] The ALJ noted that under the regulations, the extent to which a doctor is

familiar with other information in a claimant's case record is a relevant factor in deciding the

weight to give to a medical opinion. AR at 22 (citing 20 C.F.R. §§ 404.1527(c)(6); 20 C.F.R.

§§ 416.927(c)(6)). As an example of Dr. Widlan's apparent reliance on plaintiff's self-report,

the ALJ pointed to Dr. Widlan's statement that "the claimant clearly takes longer than an

average-functioning individual to complete tasks, but [he] did not identify what activity of

daily living or how it is longer than the average person (or what an average person is for that

matter)." AR at 22.

     Plaintiff contends that the fact that Dr. Widlan did not review treatment notes does not

mean he relied heavily on plaintiff's self-report, rather than an interview, routine psychological

testing, and a mental status examination. AR at 398. Plaintiff further argues that even if Dr.

Widlan did rely on plaintiff's self-report, this was not an adequate reason "where the

[examiner] does not discredit those complaints and supports his ultimate opinion with his own

_____

     [5] The ALJ also rejected Dr. Widlan's diagnosis of a cognitive disorder, noting that there
was no evidence of acceptable clinical testing to establish such a diagnosis, and plaintiff's
treating providers had not detected or diagnosed such a disorder. AR at 18, 400. Plaintiff does
not challenge the ALJ's step two finding that plaintiff did not have a cognitive disorder,
contrary to Dr. Widlan's diagnosis.

observations." Dkt. 10 at 6 (citing *Ryan v. Comm'r Soc. Sec. Admin.*, 528 F.3d 1194, 1199-1200 (9th Cir. 2008)). Plaintiff asserts that Dr. Widlan provided ample clinical observation and justification for his conclusions, and did not express concern about plaintiff's credibility. *Id.*

The Court finds that Dr. Widlan's apparent reliance on plaintiff's self-reported symptoms, as well as his failure to review any treatment notes, was a specific, legitimate reason, supported by substantial evidence, for the ALJ to give Dr. Widlan's opinion less weight. As the ALJ pointed out, Dr. Widlan made several statements regarding plaintiff's daily functioning, especially compared to "average" people, that appear to have been based upon plaintiff's self-report. For example, immediately after finding that plaintiff "exhibited significant concentration deficits that were evident during the MSE," Dr. Widlan concluded "he clearly takes longer than an average-functioning individual to complete ADL's due to depression and cognitive issues." AR at 399. However, Dr. Widlan did not indicate what, apart from plaintiff's own self-reported statements regarding his abilities, supported this conclusion. Dr. Widlan instead noted, "He stated he cannot concentrate to watch a movie. He stated he thinks he can probably concentrate to watch a thirty-minute television show." AR at 400. Dr. Widlan then noted that plaintiff was able to successfully complete a simple three-step task. AR at 399-400. Similarly, plaintiff does not challenge the ALJ's step two finding that Dr. Widlan's diagnosis of a cognitive disorder affecting plaintiff's concentration was not supported by the record. Thus, the ALJ could reasonably find that Dr. Widlan apparently relied heavily on plaintiff's self-reported symptoms, rather than his own test results, to reach this conclusion. *See Ghanim v. Colvin*, 763 F.3d 1154, 1162 (9th Cir. 2014) ("If a treating provider's opinions are based to a large extent on an applicant self-reports and not on clinical evidence, and the ALJ finds the applicant not credible, the ALJ may discount the treating provider's opinion.").

1    Moreover, the extent to which a doctor is familiar with other information in a

2    claimant's case record is a relevant factor, among others, in deciding how much weight to give

3    to a medical opinion. *See* 20 C.F.R. § 404.1527(c)(6), 416.927(c)(6). The ALJ did not err by

4    noting that Dr. Widlan did not have an opportunity to familiarize himself with plaintiff's

5    medical records.

6        The ALJ also noted that "the examiner stated that the mental status exam was below

7    what was expected given the claimant's proficiency in English. However, the examiner did not

8    test the claimant's English proficiency and English is the claimant's second language." AR at

9    22. Although without more, this was likely not a sufficient reason for the ALJ to reject Dr.

10   Widlan's opinion, the ALJ could reasonably note that Dr. Widlan's opinion regarding

11   plaintiff's "English proficiency" was unsupported by clinical testing or findings in the record.

12   *See Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1195 (9th Cir. 2004).

13       With respect to plaintiff's alcohol abuse, the ALJ noted that Dr. Widlan "indicated the

14   claimant is not capable of handling funds if awarded because of daily alcohol use but appears

15   to side step whether or not the claimant's presentation during the examination and the MSE

16   results were related to alcohol use. In fact, the claimant stated he drinks alcohol regularly, if

17   not daily." AR at 22. The ALJ further noted that Dr. Widlan's "opinions are also inconsistent

18   with subsequent medical evidence of record that MSE and psychiatric observations are grossly

19   normal when he presents for treatment (even in light of alcohol use)." AR at 22. The ALJ

20   could reasonably conclude that Dr. Widlan's conclusions appeared to be inadequately

21   supported, and inconsistent with subsequent medical evidence of mental status examinations

22   that were grossly normal. A physician's opinion of the level of impairment may be rejected

23   because it is unreasonable in light of the other evidence in the record. *See Morgan*, 169 F.3d at

24   601.

Finally, the ALJ noted that Dr. Widlan's social functioning analysis is inconsistent with the claimant's reports of lots of friends, living in a shelter, and using public transportation. AR at 22, 46-49, 394, 423, 538. Plaintiff argues that his friends "were drinking companions with whom he frequently fought." AR at 56-57. The ALJ acknowledged that plaintiff reported conflict with people he sometimes stayed with, because he could not contribute money to pay for alcohol or he was being teased for being homeless. AR at 20, 21. However, the ALJ reasoned that notwithstanding plaintiff's homelessness, plaintiff has reported a fairly high lively of socialization with friends on a daily basis in the park or while riding the bus to avoid the elements. The ALJ properly considered the fact that plaintiff is homeless and indigent, and did not err by also considering that plaintiff lives with friends or in a shelter, and that his daily activities involve a lot of social interaction.

Accordingly, the ALJ provided several specific and legitimate reasons, supported by substantial evidence, for rejecting Dr. Widlan's conclusions. Dr. Widlan made a number of equivocal statements, such as the fact that plaintiff "would struggle with persistence and slow pace and be prone of absenteeism," and "likely would have difficult with consistently negotiating social stressors." AR at 400. Plaintiff has not shown that the ALJ erred by finding Dr. Widman's conclusions to be unsupported by clinical finding or inconsistent with other medical evidence of record, and that the ALJ improperly translated and incorporated Dr. Widlan's clinical findings in to the RFC in this case.

   3. *Treating Psychiatrist James Hopfenbeck, M.D.*

Dr. Hopfenbeck wrote a letter to plaintiff's attorney in June 2016, stating that since July 2015, he had been plaintiff's treating psychiatrist in the case-managed community mental health program at the Downtown Emergency Service Center ("DESC"). AR at 720. He

1    opined that plaintiff was unable to work due to severe symptoms of depression and PTSD

2    despite adherence to treatment and medication. AR at 24, 720.

3         The ALJ provided two reasons for giving this opinion little to no weight. AR at 24-25.

4    First, the ALJ found that Dr. Hopfenbeck's opinion, which appears to pertain to the period

5    beginning in mid-2015, is inconsistent with his own longitudinal treatment notes. AR at 24.

6    This reason is specific, legitimate, and supported by substantial evidence in the record. Dr.

7    Hopfenbeck's treatment notes consistently noted that plaintiff was doing well on his

8    medications, with improvement in his depression and sleep. AR at 24, 532-33 (discussing

9    history of symptoms and medication regime), 536-37 (describing improvement in symptoms

10   with medication, less anxiety and depression and better sleep), 539 (noting plaintiff reported

11   being content with medications at current dosage, not needing to increase for depression), 543

12   (plaintiff reported his medications "are helpful and ok").

13        Second, the ALJ found that Dr. Hopfenbeck's opinion was inconsistent with other

14   objective treatment notes by his primary care provider and mental health provider, DESC,

15   which noted few complaints of depression. AR at 25 (citing Exhibit 7F). Plaintiff asserts that

16   "the ALJ cited to primary care provider notes from International Community Health Services

17   where a focus at the time was the Plaintiff's alcohol abuse, not his mental health." AR at 517,

18   418. Thus, plaintiff asserts "few of the providers' notes originated from mental health

19   providers, and therefore "it would not be unexpected to see only modest mention of mental

20   health findings." Dkt. 10 at 11. As noted above, numerous treatment notes specified that

21   plaintiff's mental status examinations were grossly normal. Although plaintiff's ongoing

22   diagnosis of depression is certainly discussed in some treatment notes, it is not identified in

23   others, and was not the primary focus of many of his visits. The ALJ could reasonably

24

conclude that plaintiff's mental health records were inconsistent with the level of severity described in Dr. Hopfenbeck's opinion. AR at 25.

Accordingly, the ALJ provided several specific and legitimate reasons, supported by substantial evidence, for discounting Dr. Hopfenbeck's opinion. "Where the evidence is susceptible to more than one rational interpretation, it is the ALJ's conclusion that must be upheld." *Burch,* 400 F.3d at 679. Plaintiff has not shown harmful error.

      C.    The ALJ Did Not Err in Evaluting Plaintiff's RFC

Because the Court has affirmed the findings of the ALJ as to plaintiff's prior assignments of error, it must also conclude that there was no error in determining plaintiff's RFC. Plaintiff has pointed to no credible evidence, apart from plaintiff's subjective complaints which were rejected by the ALJ, establishing the additional limitations that he believes should have been included in the RFC assessment. Accordingly, the ALJ did not err by omitting these additional limitations from the RFC assessment. *See Carmickle v. Commissioner, Soc. Sec. Admin.,* 533 F.3d 1155, 1164–65 (9th Cir. 2008) (holding that an ALJ's RFC assessment need not include impairments for which the medical records do not establish any work related impairments).

## VIII.   CONCLUSION

The role of this Court is limited. As noted above, the ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving any other ambiguities that might exist. *Andrews,* 53 F.3d at 1039. When the evidence is susceptible to more than one rational interpretation, it is the Commissioner's conclusion that must be upheld. *Thomas,* 278 F.3d at 954. While it may be possible to evaluate the evidence as plaintiff suggests, it is not possible to conclude that plaintiff's interpretation is the only rational

interpretation. For the foregoing reasons, the Commissioner's decision is AFFIRMED, and this case is DISMISSED with prejudice.

DATED this 3rd day of August, 2018.

James P. Donohue

JAMES P. DONOHUE
United States Magistrate Judge